UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED HERE HEALTH, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>TINOCO'S KITCHEN, LLC, et. al.,<br><br>Defendants. | Case No. 2:11-cv-02025-MMD-GWF<br><br>ORDER<br><br>(Defs.' Motion to Dismiss – dkt. no. 8;<br>Plfs.' Motion for Leave to Amend – dkt. no. 27;<br>Plfs.' Motion for Preliminary Injunction<br>– dkt. no. 28). |

## I.   SUMMARY

Before the Court are Defendant Tinoco's Kitchen, LLC and Enrique Tinoco's Motion to Dismiss (dkt. no. 8) as well as Plaintiffs United Here Health and Southern Nevada Culinary and Bartenders Pension Trust Fund's Motions for Leave to Amend (dkt. no. 27) and Preliminary Injunction (dkt. no. 28).  After considering the briefings in these motions, the Court denies Defendants' Motion, and grants Plaintiffs' request for a preliminary injunction.

## II.   BACKGROUND

Plaintiffs United Here Health (formerly the HEREIU Welfare Fund) and the Southern Nevada Culinary and Bartenders Pension Trust Fund (collectively "Trustees") are express trusts created pursuant to Section 302 of the Labor Management Relations Act of 1947 ("LMRA") by written declarations of trust ("Trust Agreements") between the Culinary Workers Union, Local 226 and Bartenders Union, Local 165 (collectively "the Unions") and various employers and employer associations in the hotel-casino and

entertainment industries. The Unions are labor organizations representing employees in these industries in Southern Nevada.

Defendant PlayLV Gaming Operations, LLC ("PlayLV") is the parent company of Las Vegas Club Hotel & Casino, LLC ("LVC") and operates and manages three gaming and hotel properties in Clark County, Nevada: the Las Vegas Club Hotel and Casino, the Plaza Hotel and Casino ("Plaza"), and the Western Hotel and Casino. According to Trustees, PlayLV is the managing member of each of the hotel and casinos, and controls and directs each. Trustees further allege that PlayLV controls all financial aspects of LVC and Plaza.

Defendant Tinoco's Kitchen, LLC ("Tinoco's") is a Nevada limited liability company formerly doing business inside the Las Vegas Club Hotel & Casino, and is operated by Defendant Enrique Tinoco ("Enrique"). On or about January 22, 2009, Tinoco's executed a sublease for restaurant space inside LVC. (Dkt. no. 10 at ¶ 7.)

In their Complaint, Trustees allege that LVC breached its Collective Bargaining Agreement ("CBA") between LVC and the Unions, as well as the Trust Agreement that created the trusts. Further, Trustees allege that LVC executed a Memorandum of Agreement ("MOA") between LVC and the Unions wherein the parties agreed, among other conditions, that the employees employed in culinary and bartender positions at Tinoco's are included within the Unions' bargaining unit, retain the same fringe benefit contributions as collectively bargained with other unit employees, and that wage payroll functions are transferred to Tinoco's, including paying benefit fund contributions for hours worked by Tinoco's employees. (Dkt. no. 1 at ¶ 13.) Trustees further allege that LVC has performed all wage and payroll functions on behalf of Tinoco's.

A payroll compliance audit conducted of Tinoco's payroll for the period between January 23, 2009, through December 31, 2010, discovered that Tinoco's and LVC had failed to report all hours of covered labor performed by Tinco's culinary and bartender employees as required by their collective bargaining agreement, MOA, and Trust

///

Agreements. (*See* dkt. no. 1 at ¶ 16.) This resulted in a failure to pay owed fringe benefit contributions to the trusts. (*Id.*)

On December 16, 2011, Trustees filed the Complaint in this action alleging that LVC failed to provide timely monthly reports of Tinoco's culinary and bartender employees as required by their CBA, MOA, and Trust Agreements, as well as failed to pay fringe benefit contributions to the trust plans on a monthly basis. (*See* dkt. no. 1 at ¶ 15.) Trustees' Complaint seeks compensatory and injunctive relief for alleged breach of contract and breach of fiduciary duty claims under the Employee Retirement Income Security Act of 1974 ("ERISA").

## III.  DISCUSSION

### A.  Defendants' Motion to Dismiss (dkt. no. 8)

Defendants Tinoco's and Enrique (collectively "Tinoco's Defendants") bring this Motion to Dismiss arguing that this action should be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1) & (6). Tinoco's Defendants argue that since no binding contract existed between Trustees and themselves, no ERISA claims can be lodged against them and no federal jurisdiction is present to try this action.

#### 1.  Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient

///

factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged– but not shown–that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

**2.   Analysis**

**a.   Subject matter jurisdiction**

Tinoco's Defendants claim that the Court lacks jurisdiction to hear this suit because no binding contract between themselves and Trustees exists. This argument fails, but not because Tinoco's Defendants are incorrect on the merits of their Motion. As the Ninth Circuit has recognized in another ERISA case, the sometimes confusing distinction between dismissal for want of jurisdiction and dismissal for failure to state a claim "has bedeviled the courts of appeals" among the courts. *See Trs. of Screen Actors Guild-Producers Pension and Health Plans v. NYCA, Inc.*, 572 F.3d 771, 775 (9th Cir.

2009).  Thus, the question in *NYCA, Inc.* – whether a non-party to a collective bargaining agreement is liable for unpaid contributions – is a question on the merits of an ERISA claim, not a jurisdictional one.  *Id.*  There, the court noted that "[i]t is a cardinal principle of federal 'arising under' jurisdiction that any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, even if that claim is later dismissed on the merits."  *Id.* (quoting *Cement Masons Health & Welfare Trust Fund for N. Cal. v. Stone*, 197 F.3d 1003, 1008 (9th Cir. 1999)).  Since Trustees' claims are not frivolous, jurisdiction under 29 U.S.C. § 185(a) and 29 U.S.C. § 1145(e) exists to hear this action.  *See* 29 U.S.C. § 1145(e) ("[T]he district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title."); 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, . . . ."); *see also Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 984 (9th Cir. 1999) (noting that although ERISA does not provide a source of jurisdiction for ERISA trust plans to sue as plaintiffs, 29 U.S.C. § 185 confers subject matter jurisdiction over the trust plan's action and that this grant of jurisdiction covers disputes over the recovery of fringe benefits under collective bargaining agreements).

### b.   Failure to state a claim

Tinoco's Defendants' Rule 12(b)(6) arguments also fail.  The mere fact that Tinoco's is not in privity of contract with Trustees does not defeat an ERISA claim.  The LMRA requires that payments to a trust fund be made pursuant to a "written agreement with the employer."  29 U.S.C. § 186(c)(5)(B).  Courts have held that such an agreement need not be signed, but need only be written and need only "set forth a detailed basis on which payments are to be made to a trust fund."  *See, e.g., Brown v. C. Volante Corp.*, 194 F.3d 351, 355 (2d Cir. 1999) (quoting *id.*); *Moriarty v. Larry G. Lewis Funeral Dirs.*

5

*Ltd.*, 150 F.3d 773, 777 (7th Cir. 1998) ("Both § 302(c)(5)(B) and general principles of contract law permit an employer to adopt a collective bargaining agreement by a course of conduct plus a writing . . . .").

Accordingly, whether a formal contract exists between Tinoco's Defendants and Trustees is of little importance, so long as a writing exists that details how payments are to be made, and some conduct manifesting adoption of a collective bargaining agreement. *See S. Cal. Painters & Allied Trade Dist. Council. No. 36 v. Best Interiors, Inc.*, 359 F.3d 1127, 1133 (9th Cir. 2004) ("To determine whether a party has adopted a contract by its conduct, the relevant inquiry is whether the party has displayed conduct manifesting an intention to abide by the terms of the agreement."). Trustees have sufficiently alleged in their Complaint that Tinoco's Defendants were under an obligation to report and pay contributions of fringe benefits to their unionized employees. Trustees first allege that the MOA includes a provision that bartender and culinary employees employed at Tinoco's are included in the bargaining unit of the Unions and subject to the collective bargaining agreement. This allegation suffices to demonstrate that a writing exists binding Tinoco's Defendants to the terms of the CBA. Further, Tinoco's Defendants payment – albeit allegedly late and insufficient payments – of fringe benefit contributions demonstrates at least a plausible claim that Tinoco's Defendants adopted the labor agreements signed between Trustees and LVC, PlayLV, and Plaza. As such, the Motion is denied. The Court need not consider the sublease entered into by Tinoco's or the Guarantee executed by Enrique Tinoco, which itself settles any question over whether Tinoco's Defendants were under a contractual obligation to abide by the terms of the CBA and MOA.

### B. Plaintiffs' Motion for Leave to File First Amended Complaint (dkt. no. 27)

Trustees seek leave to file a First Amended Complaint ("FAC") to (1) add a defendant, Plaza Hotel & Casino, LLC, whose sole operator, PlayLV, is a defendant to this suit, (2) update several factual allegations, (3) update their requests for relief, and

(4) add a reference to the bankruptcy filing of Tinoco's Kitchen. Defendants did not file an Opposition to the Motion.

### 1.  Legal standard

Under Fed. R. Civ. P. 15, a party may amend its complaint only by leave of the court once responsive pleadings have been filed and in the absence of the adverse party's written consent. *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 799 (9th Cir. 2001). The court has discretion to grant leave and should freely do so "when justice so requires." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting Fed. R. Civ. P. 15(a)). Nonetheless, courts may deny leave to amend if (1) it will cause undue delay; (2) cause undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### 2.  Analysis

No circumstances exist to deny Trustee's leave to amend their Complaint. First, filing the FAC would not create undue delay in the proceedings, since the added defendant's sole operator, PlayLV, is already a defendant to this suit. No serious delay in service or preparation would result from Plaza's addition to the suit, or from the additional information in the Amended Complaint. Second, no opposing party would be prejudiced by the new defendant or the information added, as they were or should have been aware of these new allegations as well as the involvement of Plaza in the lawsuit. Third, no indication of bad faith exists in Trustee's request to amend. Fourth, the amendments to the Complaint would not be futile, as Trustees have demonstrated that Plaza may be enjoined alongside the other defendants for violations of the labor agreements. Fifth, and perhaps most importantly, Defendants' failure to oppose the Motion constitutes consent to its granting. *See* Local Rule 7-2(d). Accordingly, Trustee's Motion for Leave is granted.

///

### C. Trustee's Motion for Preliminary Injunction (dkt. no. 28)

Trustees bring this Motion seeking a court order mandating Defendants comply with the terms of collective bargaining agreements signed between Defendants and the Unions by curing prior delinquencies and ordering Defendants to comply with these terms into the future. Trustees allege that Defendants Plaza, LVC, and PlayLV have not submitted one payment in a timely manner since December 16, 2011, and as a result accrued large delinquencies that they have been unwilling to cure.

#### 1. Legal Standard

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). "In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l. Molders' & Allied Workers' Local Union No. 164*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).

"The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."
///

*Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471 (1973)).

### 2. Analysis

ERISA is a comprehensive and remedial statute designed to promote and protect the interests of participants and their beneficiaries in employee benefit plans. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983); *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361-62 (1980). Defendants, with the exception of Tinoco's Defendants,[1] are employers within the meaning of ERISA. *See* 29 U.S.C. § 1002(5). Under ERISA,

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Here, as detailed above, the record demonstrates that the Unions entered into a collective bargaining agreement with Defendant LVC, who agreed to the terms and conditions of the Trust Agreements, and executed the MOA. Defendants Plaza, LVC, and PlayLV are obligated through these agreements to report the identities and hours worked of Tinoco's employees on a monthly basis, and to use that information to provide monthly contributions to the Trusts for fringe benefits.

When an employer fails to make such contributions, ERISA provides that the fiduciary for a plan – in this case Trustees – may bring an action and obtain a mandatory award for the plan consisting of:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

---

[1] Trustees do not seek a preliminary injunction against Tinoco's Defendants.

1   (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).  In addition to the remedies available under ERISA, a benefit trust fund may, as a third-party beneficiary, recover for breach of a collective bargaining agreement under 29 U.S.C. § 185(a). *See Hudson Cnty. Carpenters Union Local Union No. 6. v. V.S.R. Constr. Corp.*, 127 F.Supp.2d 565, 568 (D.N.J. 2000) ("It is well-established that the failure to make contributions to a union trust fund as required by a collective bargaining agreement constitutes a violation of ERISA § 515 and a violation of [29 U.S.C. § 185]."); *Bugher v. Feightner*, 722 F.2d 1356, 1357-60 (7th Cir. 1983) (explaining that ERISA remedies are intended to supplement rather than supersede rights existing under 29 U.S.C. § 185(a)).

Further, ERISA provides that an action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 28 U.S.C. § 1132(a)(3).  ERISA permits a court to grant such injunctive relief "to enjoin a recalcitrant employer from failing to comply with the benefit payment provisions of a labor agreement." *Laborers Fringe Ben. Funds v. Nw. Concrete & Constr., Inc.*, 640 F.2d 1350, 1351-52 (6th Cir.1981) (per curiam).

### a.   Likelihood of success on the merits

Plaintiffs have met their burden of demonstrating a likelihood of success on the merits. Defendants effectively concede that they have not made the required contributions in accordance with the terms and conditions of the various labor agreements effective here.  Defendants only oppose the Motion on the grounds that (1) the Plaza is not a party to the litigation; (2) the Motion violates the automatic stay in the Tinoco's Kitchen bankruptcy; (3) Defendants have complied with the CBA because they have been submitting reports in a timely manner; and (4) no threat of irreparable harm exists for failure to provide payments in a timely manner.  These arguments fail.

///

First, by virtue of the Court's ruling on Trustee's Motion for Leave to Amend, Plaza is a proper party to the suit, and subject to any injunction issued by the Court. Second, Trustees do not seek an injunction against Tinoco's Defendants, and thus are not violating the automatic stay involved in the bankruptcy petition. Third, the fact that the reports were timely delivered does not cure the deficiencies in benefit payments. Fourth, irreparable harm does exist notwithstanding what appears only to be a monetary loss that Trustees seek to remedy, as explained below.

### b. Likelihood of irreparable harm

While Trustees argue that the traditional requirements of a preliminary injunction do not apply where a statute, such as ERISA, specifically empowers a court to grant injunctive relief, courts nevertheless have applied the traditional elements of a preliminary injunction in cases like this one involving alleged delinquencies in payments of trust obligations under an ERISA plan. *See, e.g.*, *Sheet Metal Workers' Intern. Ass'n, Local 206, of Sheet Metal Workers' Intern. Ass'n, AFL-CIO v. W. Coast Sheet Metal Co.*, 660 F. Supp. 1500, 1505-06 (9th Cir. 1987); *Int'l Res., Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 302 (6th Cir. 1991); *Laborers Fringe Ben. Funds*, 640 F.2d at 1353; *Solis v. Hutcheson*, No. 12-236, 2012 WL 2151525, at *5-7 (D. Idaho June 13, 2012).

Although purely monetary damages typically cannot sustain a finding of irreparable harm, failure to pay benefits to employees under an obligation in an ERISA plan has been held to constitute irreparable injury due to its non-monetary consequences. *See United Steelworkers of Am., AFL-CIO v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1280 (3d. Cir. 1979) ("[T]he fact that the payment of monies is involved does not automatically preclude a finding of irreparable injury."); *Gould v. Lambert Excavating, Inc.*, 870 F.2d 1214, 1217-18 (7th Cir. 1989) (affirming preliminary injunction award against employer for failure to make pension fund contributions, noting that "if a pension is making payments without receiving contributions its stability may be jeopardized"); *Meehan v. Gristede's Supermarkets, Inc.*, No. 95-2104, 1997 WL 1097751, *3 (E.D.N.Y. Sep. 25, 1997) (loss of health insurance benefits may irreparably harm employees and

their families); *Bd. Of Trs. For the Ohio Laborers' Fringe Benefit Programs v. Savcon, Inc.*, No. 10-657, 2011 WL 2633184, at *5 (S.D. Ohio July 5, 2011).

Here, Alicia Hernandez, accounting manager for the administrator of Southern Nevada Culinary and Bartenders Pension Trust, described in her affidavit how annual audits of the trust fund include actuarial analyses that assume employers will pay monthly contributions in a timely manner. (Dkt. no. 31 at ¶ 5.) Failure to pay contributions on time places the fund in "a position where is it [sic] required to pay out benefits despite never receiving the contributions to cover those benefits," which "undermines the actuarial assumptions used to project the financial stability of the Fund and its ability to provide coverage to its participants." (*Id.* at ¶ 6.) Given the instability that results from delinquent contributions to fringe benefit plans, Trustees have established a threat of irreparable harm beyond mere monetary losses, since the fiscal and actuarial soundness of their benefits plans are jeopardized by Defendants' actions. A threatened loss of these crucial insurance benefits suffices to establish a threat of irreparable injury. *See Whelan v. Colgan*, 602 F.2d 1060, 1062 (2d Cir. 1979) ("[T]he threatened termination of benefits such as medical coverage for workers and their families obviously raised the spectre of irreparable injury.").

The threat of irreparable harm is further compounded by the history of judgments by confession entered into by employees associations and Defendant LVC, Plaza, and PlayLV for unpaid contributions. *See The Hotel Emps. And Restaurant Emps. Int'l Union Welfare Fund v. Las Vegas Club Hotel & Casino, LLC*, No. 11-1176 (D. Nev. July 21, 2011) (order granting judgment by confession); *The Hotel Emps. And Restaurant Emps. Int'l Union Welfare Fund v. Plaza Hotel & Casino, LLC*, No. 11-1176 (D. Nev. Aug. 9, 2012) (same); *see also Bd. Of Trs. For the Laborers' Fringe Benefit Programs*, 2011 WL 2633184, at *5 (prior history of delinquencies weighed in favor of issuing preliminary injunction).

///

///

### c. Balance of hardships and public interest

The balance of hardships and public interest also favors issuing a preliminary injunction. It is little hardship upon Defendants to be subject to an injunction ordering them to comply with obligations they are already subject to, while Trustees have demonstrated hardship that would result from continued delinquencies by Defendants. The public's interest in maintaining the integrity of employees' fringe benefit plans also counsels for a preliminary injunction. Trustees have thus established the requirements for issuance of preliminary relief.

## IV. CONCLUSION

Accordingly, IT IS ORDERED THAT Defendants Tinoco's Kitchen, LLC and Enrique Tinoco's Motion to Dismiss (dkt. no. 8) is DENIED.

IT IS FURTHER ORDERED THAT Plaintiffs United Here Health and Southern Nevada Culinary and Bartenders Pension Trust Fund's Motion for Leave to Amend (dkt. no. 27) is GRANTED.

IT IS FURTHER ORDERED THAT Plaintiffs' Motion for Preliminary Injunction (dkt. no. 28) is GRANTED.

Defendants PlayLV, LVC, and Plaza are ordered to cure all outstanding deficiencies in fringe benefits contributions, and to comply with their obligations as set out under the applicable labor and trust agreements between the parties. This includes Defendants' obligation to report employment data to Trustees on a timely basis, as well as Defendants' obligations to timely make contributions to their employees' fringe benefits plans.

DATED THIS 13th day of November 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE