**CHRISTENSEN JAMES & MARTIN**
KEVIN B. CHRISTENSEN, ESQ.
Nevada Bar No. 175
Email: kbc@cjmlv.com
DARYL E. MARTIN, ESQ.
Nevada Bar No. 6375
Email: dem@cjmlv.com
WESLEY J. SMITH, ESQ
Nevada Bar No. 11871
Email: wes@cjmlv.com
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Tel.: (702) 255-1718
Fax: (702) 255-0871
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\* \* \* \* \***

| | |
|---|---|
| UNITE HERE HEALTH, et al., | CASE NO.: 2:11-cv-02025-MMD-GWF |
|        Plaintiffs, | **MOTION FOR ORDER ON SHORTENED TIME TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE SANCTIONED FOR FAILURE TO COMPLY WITH PRELIMINARY INJUNCTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| TINOCO'S KITCHEN, LLC, et al., | |
|        Defendants. | |
| | Date:_____ |
| | Time:_____ |

The Plaintiffs, UNITE HERE HEALTH ("Welfare Fund") and the Southern Nevada Culinary and Bartenders Pension Trust Fund ("Pension Fund") (collectively hereinafter "Plaintiffs" or "Trusts"), by and through their attorneys, Christensen James & Martin, hereby move this Court for its Order to show cause why PlayLV Gaming Operations, LLC ("PlayLV"), Las Vegas Club Hotel & Casino, LLC ("LVC") and Plaza Hotel & Casino, LLC ("Plaza") (collectively "Defendants") should not be sanctioned for failure to comply with the Preliminary Injunction issued on November 13, 2012 [Doc. 34].

*CHRISTENSEN JAMES & MARTIN*
*7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117*
*PH: (702) 255-1718 § FAX: (702) 255-0871*

This Motion is based upon the Memorandum of Points and Authorities filed herewith, the Exhibits and Declarations filed attached hereto, the pleadings and papers on file herein and upon any oral argument to be presented to the Court at the time of hearing.

DATED this 10th day of January, 2013.

CHRISTENSEN JAMES & MARTIN

By: ____/s/ Wesley J. Smith_____
Wesley J. Smith, Esq.
Nevada Bar No. 11871
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Tel.: (702) 255-1718
Fax: (702) 255-0871
Email: wes@cjmlv.com
*Attorneys for Plaintiffs*

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.**

**INTRODUCTION**

The Court issued a Preliminary Injunction against PlayLV Gaming Operations, LLC ("PlayLV"), Las Vegas Club Hotel & Casino, LLC ("LVC") and Plaza Hotel & Casino, LLC ("Plaza") (collectively "Defendants") on November 13, 2012 [Doc. 34] which required the Defendants to do the following:

1) "Cure all outstanding deficiencies in fringe benefits contributions"; and

2) "Comply with their obligations as set out under the applicable labor and trust agreements between the parties. This includes Defendants' obligation to report employment data to Trustees on a timely basis, as well as Defendants' obligations to timely make contributions to their employees' fringe benefits plans."

*See* Preliminary Injunction at 13 [Doc. 34].

Unfortunately, the Defendants have not complied with the Preliminary Injunction. The Defendants have not cured all outstanding deficiencies or timely made current contributions to the Trusts. The Plaintiffs therefore seek the Court's Order to Show Cause why the Defendants should not be sanctioned for these failures.

## II.

### STATEMENT OF FACTS

The Plaintiff Trusts are express trusts created pursuant to Section 302 of the Labor Management Relations Act of 1947 ("LMRA") as amended [29 U.S.C. § 186(c)] by written declarations of trust ("Trust Agreements") between the Culinary Workers Union, Local 226 and Bartenders Union, Local 165 ("Unions") and various employers and employer associations in the hotel-casino and entertainment industries in which the bargaining units of the Unions participate.

Defendant PlayLV Gaming Operations, LLC ("PlayLV") is the managing member of Las Vegas Club Hotel & Casino, LLC ("LVC") and Plaza Hotel & Casino, LLC ("Plaza"), which operate and manage the Las Vegas Club Hotel and Casino and the Plaza Hotel and Casino, respectively, in downtown Las Vegas. PlayLV controls all financial aspects of LVC and Plaza.

LVC and Plaza are bound by collective bargaining agreements (collectively "Labor Agreements") with the Local Joint Executive Board of Las Vegas, the bargaining representative for the Unions.[1]  *See* Labor Agreements attached as Exhibits 1 & 2.  By executing the instruments constituting the Labor Agreements, LVC and Plaza agreed to be bound by their terms and conditions, and by the terms and conditions of the Trust Agreements. *See* Trust Agreements attached as Exhibits 3 & 4.  Under the Labor Agreements, Trust Agreements, the

---

[1] To be clear, the Plaza and the Las Vegas Club each have a collective bargaining agreement with the Union. Although the CBAs are nearly identical, each hotel/casino has a separate agreement.

Employee Retirement Income Security Act of 1974 ("ERISA") [29 U.S.C. §1001 et seq.], and the LMRA, the Defendants are obligated to submit written reports to the Trusts on a timely basis showing the identities of their employees performing work covered by the Labor Agreements and the number of hours worked by or paid to these employees. Further, they are obligated to timely pay fringe benefit contributions to the Trusts on a monthly basis and at specified rates for each hour worked by or paid to the employees covered by the Labor Agreements. The monthly reports and corresponding contribution payments must be submitted to the Trusts at their administrative offices on or before the fifteenth (15th) day of each month following the work month in which hours of work covered by the Labor Agreements were performed, i.e. the report and contributions for the May 2012 work month were due on or before June 15, 2012.

Plaintiffs filed a Motion for Preliminary Injunction on July 6, 2012 complaining that the Defendants were habitually delinquent on these report and payment obligations and had recurring and mounting delinquencies. The Court, finding a substantially likelihood of success on the merits and to avoid irreparable harm, issued a Preliminary Injunction on November 13, 2012 requiring the Defendants to cure all delinquent amounts and to timely report and pay contributions going forward. *See* Preliminary Injunction at 8-13 [Doc. 34].

When the Motion for Preliminary Injunction was filed on July 6, 2012, the Defendants were delinquent to the Trusts in the amount of $190,399.85.[2] *See* Motion for Preliminary Injunction at 6-7 [Doc. 28].

---

[2] This amount includes all contributions reported by Plaza and LVC to be owed at the time the Motion for Preliminary Injunction was filed. It does not include any amounts owed for work done in the Tinoco's restaurant or amounts discovered to be owed by audit (i.e. unreported amounts).

-4-

When the Preliminary Injunction was issued by the Court on November 13, 2012, the Defendants were delinquent to the Trusts in the amount of $470,166.84.[3]  *See* Delinquency Breakdowns dated November 14, 2012, attached hereto as Exhibit 5.

As of the date of the filing of this Motion, the Defendants were delinquent to the Trusts in the amount of $633,965.15.[4]  *See* Delinquency Breakdowns dated January 10, 2013, attached hereto as Exhibit 6.

Just by looking at the numbers, it is clear that the Defendants have NOT cured the delinquencies.[5]  When the Preliminary Injunction was issued, the Defendants were delinquent for August and September 2012 contributions.  *See* Exhibit 5.  August and September are still outstanding.  *See* Exhibit 6; *see also* Declaration of Andrea Reise attached as Exhibit 7.

Defendants have also NOT <u>timely</u> remitted contributions going forward as the Preliminary Injunction requires.  Defendants made payments for contributions for the October and November 2012 work months, but those payments were made <u>late</u>.  October 2012 contributions were due on November 15, 2012, but were not paid until November 21, 2012.  November 2012 contributions were due December 15, 2012, but were not paid until January 9, 2013.  Additionally, Defendants have reported contributions owed for December 2012, which

---

[3] *See* note 2 supra.  Similarly, this amount includes all contributions reported by Plaza and LVC to be owed <u>at the time the Preliminary Injunction was issued</u>.  It does not include any amounts owed for work done in the Tinoco's restaurant or amounts discovered to be owed by audit (i.e. unreported amounts).

[4] *See* notes 2 & 3 supra.  Similarly, this amount includes all contributions reported by Plaza and LVC to be owed currently, <u>at the time this Motion was filed</u>.  It does not include any amounts owed for work done in the Tinoco's restaurant or amounts discovered to be owed by audit (i.e. unreported amounts).

[5] The Defendants have, however, reported their employment data in a timely manner.

will be due on January 15, 2013. Plaintiffs have no faith that the Defendants will suddenly change course and pay these on time.

The Defendants' self-reporting of the amounts owed is paramount. The amounts at issue here have been determined by the Defendants themselves. They prepared the reports. They calculated the amounts owed. They submitted these reports to the Trusts. The Trusts simply need those reported amounts to be paid, and to be paid on time.[6]

### III.

### LEGAL STANDARDS

The Court has the authority to punish contempt of court. *U.S. v. Rylander*, 714 F.2d 996, 1001 (9th Cir. 1983). *See also* Fed. R. Civ. P. 70(e). Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Go-Video, Inc. v. The Mot. Picture Ass'n of Am.*, 10 F.3d 693, 695 (9th Cir. 1993). The party's violation "need not be willful," and there is no good faith defense to civil contempt. *Id.* (*quoting In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365). The penalties for civil contempt are designed to compel compliance with the court order or to compensate the contemnor's adversary for any damages resulting from the contemptuous behavior. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983). Courts also have the "inherent power to dismiss an action or enter a default judgment to ensure the orderly administration of justice and the integrity of their orders." *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982). *See also TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916 (9th Cir. 1987).

### IV.

---

[6] The reasons why the amounts need to be paid, i.e. irreparable harm, are set forth adequately in the Preliminary Injunction [Doc. 34].

**ARGUMENT**

**A.    The Court Should Expedite Decision on this Matter**

LR 6-1 allows parties to request an Order Shortening Time.  An expedited decision is appropriate here.  The Court issued a Preliminary Injunction to avoid irreparable harm to the Plaintiffs while this case proceeds through litigation.  The Court found it appropriate to issue an injunction presently rather than force the Plaintiffs to wait for relief.  The Preliminary Injunction has not motivated the Defendants to cure the delinquencies.  In fact, the situation is worse now than when the Preliminary Injunction was issued.  It has not been more than six months since the Plaintiffs first requested relief and that relief has still not been realized because the Defendants choose not to abide by the Court's orders.  The Plaintiffs request an expedited decision on this matter to avoid any further delay and any further harm to the Plaintiffs.

**B.    The Court Should Issue an Order to Show Cause why Defendants Should Not be Sanctioned for Failure to Comply with the Preliminary Injunction.**

As the facts set forth above demonstrate, the Defendants have failed to comply with the Preliminary Injunction.  Below the Plaintiffs will demonstrate that sanctions are appropriate for these failures.  The burden should be on the Defendants to show why they should not be sanctioned.

**C.    The Court Should Enforce the Preliminary Injunction**

This Court has the inherent power to enforce its Orders.  Further, the Preliminary Injunction falls into the definition of a "judgment" under the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 54(a) (". . . includes a decree and any order from which an appeal lies"); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233 n. 5 (3d Cir. 2008) (preliminary injunction generally qualifies as a judgment from which an immediate appeal may be taken); *Branstad v. Veneman*, 2001 WL 34008494 , *3 (N.D. Iowa 2001) (". . . a preliminary

injunction is subject to reconsideration under Rule 60(b)(2), because it is a "final judgment" within the meaning of the Federal Rules of Civil Procedure."); 28 U.S.C. § 1292(a) ("[T]he courts of appeals shall have jurisdiction of appeals from ... [i]nterlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions[.]").  Therefore, the Court may treat and enforce it as a judgment, including the remedies for failure to act enumerated under Fed. R. Civ. P. 70.

A Court has several remedies when a party fails to act pursuant to judgment, including (i) ordering the act to be done by a third party at the disobedient party's expense, (ii) enter a judgment divesting any party's title and vesting it in others, (iii) issue a writ of attachment or sequestration against the disobedient party's property to compel obedience, (iv) issue a writ of execution or assistance, or (v) hold the disobedient party in contempt.  Fed. R. Civ. P. 70.

1.    The Court Should Hold the Defendants in Contempt.

A Court "may . . . hold the disobedient party in contempt."  Fed. R. Civ. P. 70(e). Holding a disobedient party in contempt is also allowed by statute.  "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."  18 U.S.C.A. § 401(3).

Before a Court may hold a party in contempt, it must be shown that "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply."  *See EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n,* 753 F.2d 1172, 1178 (2d Cir. 1985), *aff'd,* 478 U.S. 421 (1986).  Each is present here.

The Court's order is clear and unambiguous.  The Court ordered the Defendants to do three things: first, "Cure all outstanding deficiencies in fringe benefits contributions"; second,

"report employment data to Trustees on a timely basis"; and third, "timely make contributions to their employees' fringe benefits plans."  Preliminary Injunction at 13 [Doc. 34].

"Cure all outstanding deficiencies" is clear and unambiguous because the amounts owed by the Defendants are self-reported.  The Defendants know firsthand what they owe.  The Court ordered the Defendants to pay "all" of these amounts owed, which were August and September 2012 contributions at the time the Preliminary Injunction issued.  *See* Exhibits 5, 6 & 7.  It has been two months since the injunction was issued, yet the Defendants have not made any payment toward the outstanding deficiencies. The Defendants should be ordered to show cause why they have not complied.

The second obligation to "report employment data to Trustees on a timely basis" and the third obligation to "timely make contributions to their employees' fringe benefits plans" are also clear and unambiguous.  The Court explained that the Defendants must comply with these obligations "as set out under the applicable labor and trust agreements between the parties."  Therefore, any ambiguity in the Order could be resolved by referring to those documents.  *See* Exhibits 1, 2, 3, & 4.  The Defendants obviously understood the second obligation to timely report employment data because they have reported the November and December 2012 work months in a timely manner.  *See* Exhibits 6 & 7.  They also paid contributions for the October and November 2012 work months, just not <u>timely</u>.  *Id.*  If timely is the only part of the obligation that is giving them an issue, it is difficult what could be unclear about the requirement.  Again, the due date for contributions is clearly set forth in the Labor Agreements and Trust Agreements. *See* Exhibits 1, 2, 3, & 4.

The Plaintiffs have submitted clear and convincing evidence of noncompliance.  The Trusts' third party administrator, Zenith American Solutions, handles all of the report and payment functions for the Trusts.  The declaration of Andrea Reise, a contribution accounting

auditor, and the delinquency breakdowns show the Defendants' report and payment history. *See* Exhibit 7.

Finally, the Defendants have not diligently attempted to comply. The Defendants have not made *any* payments toward the August and September 2012 contributions to cure the outstanding delinquencies. *See* Exhibit 6 & 7. Further, they are still paying current contributions late. *Id.* These late payments only add to the total delinquency in accrued interest and liquidated damages. Rather than the delinquencies shrinking, they are getting larger. A bad situation at the time the Plaintiffs originally sought relief in July 2012 has turned worse. Under Fed. R. Civ. P. 70(e) and 18 U.S.C.A. § 401(3), the Defendants should be held in contempt for failure to comply with the Preliminary Injunction.

> 2.      The Court Should Liquidate the amounts to be paid under the Preliminary
>         Injunction and Issue a Writ of Execution

The Preliminary Injunction requires the Defendants to cure all outstanding delinquencies and these have not been paid. Under Fed. R. Civ. Pro. 70(d), a party may apply for the clerk to issue a writ of execution or assistance to enforce an order to pay. Additionally, the payment could be considered a judgment for money governed by Fed. R. Civ. P. 69(a) rather than Fed. R. Civ. P. 70. Rule 69(a) provides the "[p]rocess to enforce a judgment for the payment of money shall be a writ of execution unless the court directs otherwise." *See e.g., Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983) (quoting 7 J. Moore and J. Lucas, Moore's Federal Practice ¶ 69.03 [2] (2d ed. 1982)); *Spain v. Mountanos*, 690 F.2d 742, 744-45 (9th Cir. 1982); *Aetna Casualty & Surety Co. v. Markarian*, 114 F.3d 346, 349 (1st Cir. 1997).

Accordingly, the Plaintiffs request that the Court authorize the Clerk to issue a writ of execution in the amount $470,166.84, which is the amount owed for the August and September 2012 contributions, accrued interest and liquidated damages at the time the Preliminary

1    Injunction was issued by the Court on November 13, 2012.  *See* Exhibit 5.  These amounts are

2    confirmed to still be owed.  *See* Exhibits 6 & 7.

3    **D.      Alternatively, the Court Should Enter Partial Summary Judgment and Issue a Writ**
         **of Execution**

4

5            The amount owed above, $470,166.84, is based on the Defendants' own reporting to the

6    Trusts.  *See* Exhibits 6 & 7.  When the Plaintiffs filed the Motion for Preliminary Injunction, they

7    attached copies of the Labor Agreements requiring reports and payments for contributions to the

8    Trusts.  *See* Motion for Preliminary Injunction and exhibits [Doc. 28-1].  They also attached

9    summaries and breakdowns of the delinquencies prepared by the Trusts' third party

10   administrator, as well as a declaration from Andrea Reise who handles contribution accounting

11   for the Trusts.  *See id.*  In addition to these documents, the Trusts submit the Trust Agreements,

12   Exhibits 3 & 4, another declaration of Andrea Reise, Exhibit 7, and copies of the Defendants'

13   reports for August and September 2012, Exhibits 8 & 9.

14

15           In opposing the Motion for Preliminary Injunction, the Defendants did not dispute that

16   they owe these amounts or raise any defense to judgment on the claims.  *See* Preliminary

17   Injunction at 10 [Doc. 34] ("Defendants effectively concede that they have not made the required

18   contributions in accordance with the terms and conditions of the various labor agreements effective

19   here.").  The Court has already determined that the Plaintiffs have a likelihood of success on the

20   merits of these claims and the Defendants did not raise any arguments to the contrary.  One would

21   assume that a defense would have been raised if one existed.  Simply, there is no dispute that the

22   amounts are owed.  In other words, there is no genuine dispute of material fact.  Because there is no

23   dispute of material fact, the Plaintiffs propose that partial summary judgment on the August and

24

25

26

27

28

September 2012 contributions may be entered now.[7]  *See* Fed. R. Civ. P. 56 ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

**E.      The Defendants Should be Sanctioned**

As a sanction, the Defendants should be ordered to pay the Trusts reasonable fees incurred in preparing this Motion.  If the Defendants had complied with the Preliminary Injunction, this Motion would not have been necessary.  However, the Defendants have not complied and the Trusts have been forced to incur additional fees in this case to bring the noncompliance to the Court's attention and seek relief.

**V.**

**CONCLUSION**

The purposes for the Preliminary Injunction have been frustrated by the Defendants failure to comply.  The Trusts continue to suffer irreparable harm and the delinquencies are mounting.  The Trusts respectfully request that the Court enforce the Preliminary Injunction as requested herein.

DATED this 11th day of January, 2013.

CHRISTENSEN JAMES & MARTIN

By:   */s/ Wesley J. Smith*
Wesley J. Smith, Esq.
Nevada Bar No. 11871
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Tel.: (702) 255-1718
Fax: (702) 255-0871
Email: wes@cjmlv.com
*Attorneys for Plaintiffs*

---

[7] This summary adjudication would only be partial because the original claims concerning liability for the Tinoco's Kitchen contributions would still be outstanding.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I am an employee of Christensen James & Martin. On the date of filing of the foregoing papers with the Clerk of Court I caused a true and correct copy to be served in the following manner:

☒      ELECTRONIC SERVICE:      Pursuant to Local Rule LR 5-4 of the United States District Court for the District of Nevada, the above-referenced document was electronically filed and served on all appearing parties through the Notice of Electronic Filing automatically generated by the Court.

☐      UNITED STATES MAIL:      By depositing a true and correct copy of the above-referenced document into the United States Mail with prepaid first-class postage, addressed to the parties at their last-known mailing address(es):

☐      OVERNIGHT COURIER:      By depositing a true and correct copy of the above-referenced document for overnight delivery via a nationally-recognized courier, addressed to the parties listed below at their last-known mailing address.

☐      FACSIMILE:  By sending the above-referenced document via facsimile to those persons listed on the attached service list at the facsimile numbers set forth thereon.

Christensen James & Martin

By: _/s/ Natalie Larson_____